```
               IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA


Thomas Warren                     :     CIVIL ACTION
                                  :
     vs.                          :
                                  :     NO. 11-CV-6050
Richard J. Mandel, M.D., et al :
```

### MEMORANDUM AND ORDER

**JOYNER, C.J.**                                              **June 20, 2012**

This Section 1983 action is presently before the Court for disposition of the Motion of Defendant, Richard Mandel, M.D. to Dismiss Count IX of Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons which follow, the Defendant's motion is granted.

### Factual Background

It appears from the amended complaint of the Plaintiff that this lawsuit has its origins in the events surrounding and immediately following September 26, 2009. Plaintiff Thomas Warren allegedly sustained a Bennett's fracture of his left thumb while playing basketball at the Curran-Fromhold Correctional Facility (hereinafter "CFCF") in Philadelphia. (See Ex. A at ¶ 22.) At about 11:15 am, Plaintiff went to the medical department of the CFCF, where co-Defendant Dr. Luis Jose Boggio reviewed the x-ray

of Plaintiff's assertedly swollen left hand. (See Ex. A at ¶ 21.) Dr. Boggio's review of the x-ray concluded that there were no broken bones. (See Ex. A at ¶ 23.)

Plaintiff states that on September 29, 2009, he was involved in a physical altercation with another inmate. (See Ex. A at ¶ 24.) On September 30, 2009, Plaintiff met with Dr. Clemons at the CFCF medical department. Dr. Clemons ordered and read a new x-ray, and informed Plaintiff that he had sustained a hand fracture. Dr. Clemons also reviewed the September 26, 2009 x-ray, and informed Plaintiff that the fracture was present on that date as well. (See Ex. A at ¶ 25.) Co-Defendant Dr. Arnone concurred with Dr. Clemons that the September 30 x-ray depicted a broken bone. Dr. Arnone subsequently scheduled Mr. Warren to see Dr. Mandel, an orthopedic surgeon. (See Ex. A at ¶ 26.)

On October 2, 2009, Dr. Mandel viewed Plaintiff's x-ray at CFCF, and informed Plaintiff that he would require surgery to repair his fractured hand. (See Ex. A at ¶ 27.) The surgery would include inserting two metal pins in the hand. (See Ex. A at ¶ 27.)

The surgery took place on October 9, 2009, and Dr. Mandel subsequently splinted and bandaged Plaintiff's left hand. (See Ex. A at ¶ 28.) Plaintiff alleges that Dr. Mandel scheduled a follow-up appointment for him ten to fourteen days after surgery. (See Ex. A at ¶ 29.)

On October 17, 2009, Plaintiff went to the CFCF medical department, complaining of a sharp pain in his left hand. The on-duty physician informed him that one of the metal pins in his hand was poking against his skin, and rubbing against his splint. The physician subsequently ordered another x-ray, and Tylenol 3 for Plaintiff's pain.  (See Ex. A at ¶ 30.) He also purportedly informed Plaintiff that he would schedule another appointment with an orthopedic surgeon.  (See Ex. A at ¶ 30.)

On October 19, 2009, co-Defendant Dr. Arnone ordered and reviewed a new x-ray of Plaintiff's left hand.  (See Ex. A at ¶ 31.) Defendant returned to the CFCF medical department on October 24, 2009, where Dr. Margaret Burke examined him. Dr. Burke ordered Plaintiff to see Dr. Mandel again, and also prescribed Tylenol 3 for pain.  (See Ex. A at ¶ 32.)

Plaintiff was finally scheduled to see Dr. Mandel on November 5, 2009. On the way to the appointment, Plaintiff was informed that Dr. Mandel had canceled the appointment, because Plaintiff was not on time.  (See Ex. A at ¶ 36.) At that time, corrections officers allegedly informed Dr. Mandel that Plaintiff was in severe pain, and that the pin was sticking out of Plaintiff's hand.  (See Ex. A at ¶ 36.) That same day, November 5, 2009, after learning that Dr. Mandel had canceled the appointment, Dr. Burke called Dr. Mandel to inform him that "the surgical pin was sticking out of Plaintiff's left hand, and that

the Plaintiff was in excruciating pain." (See Ex. A at ¶ 37.) Dr. Mandel told Dr. Burke to send Plaintiff to an emergency room. (See Ex. A at ¶ 37.) Despite this instruction, Plaintiff was not taken to an emergency room.

   Plaintiff returned to see Dr. Mandel on November 11, 2009, and although Dr. Mandel removed the pin from Plaintiff's hand, he did not re-splint the hand. (See Ex. A at ¶ 41.) Plaintiff was again seen by Dr. Mandel on November 19, 2009, when Dr. Mandel removed a K wire that was backing out of Plaintiff's left hand. (See Ex. A at ¶ 41.) Once again, the hand was not re-splinted. (See Ex A at ¶ 41.) Dr. Mandel again examined Plaintiff on March 1, 2010, at which time Dr. Mandel removed another K wire that was protruding from Plaintiff's left hand. (See Ex A at ¶ 44.) Dr. Mandel also recommended surgery to remove the remaining pin and K wire. (See Ex. A at ¶ 44.) Plaintiff refused the surgery, which was scheduled for March 12, 2010, because Plaintiff stated that the surgery recommendation was contrary to the recommendation made by Dr. Mandel's colleague, Dr. McHugh. (See Ex. A at ¶ 45.) After Plaintiff refused the surgery, Dr. Mandel apparently did not offer any other options to Plaintiff for corrective surgery. (See Ex. A at ¶ 46.)

   The next time Plaintiff was examined by a physician was on July 16, 2010, when Dr. Albert A. Weiss examined Plaintiff's hand at Temple University Hospital. (See Ex. A at ¶ 51.) By this

4

time, "the condition of Plaintiff's hand had deteriorated to such an extent that revision surgery was no longer possible." (See Ex. A at ¶ 51.) Plaintiff subsequently underwent surgery which, by design, resulted in total loss of Carpal-MetaCarpal joint motion in Plaintiff's left thumb. (See Ex. A at ¶ 52.) The surgery took place at Temple University Hospital in December of 2010.

Plaintiff initially filed a *pro se* civil complaint against Dr. Mandel and various other correctional officers and health care providers on January 29, 2010. After counsel was appointed to represent him, Plaintiff subsequently filed an amended complaint on March 14, 2011. After each of the defendants filed Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the plaintiff voluntarily withdrew his amended complaint. He then filed a new civil action, and once again amended the complaint on March 8, 2012, after each defendant again filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

In Plaintiff's Amended Complaint, he alleges a claim against Dr. Luis Jose Boggio, Dr. James Arnone, Dr. John Doe No. 1, Corizon Health, Inc. and Dr. Richard Mandel for medical malpractice. He also avers a claim against Kim Daniels, R.N. for nursing malpractice. Furthermore, he alleges a claim against Dr. Boggio, Dr. Arnone, Dr. John Doe No. 1, Dr. Mandel, Kim Daniels, R.N., Louis Giorla, John Delaney, Gerald May, Dr. John Doe No. 2,

Dr. John Doe No. 3, and Bruce Herdman for a violation of his statutory civil rights, and of his Eighth, Fifth, and Fourteenth Amendment rights under the United States Constitution. Finally, Plaintiff asserts a statutory civil rights violation and a violation of his Eighth Amendment rights against the City of Philadelphia.

### **Standards Governing Pleadings and Motions to Dismiss**

The standard of review for a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss requires that the complaint be read in the light most favorable to the plaintiff, taking all well-pleaded, material allegations in the complaint as true. Estelle v. Gamble, 429 U.S. 97, 99 (1976).

"A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element," and that a claim to relief is plausible on its face. Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007).

However, the Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's Rule 8 obligation to provide the 'grounds' of his 'entitlement to

relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. 544, 555 (rejecting previous liberal standard of 12(b)(6) review in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 555 U.S. at 563.

Additionally, Fed. R. Civ. P. 15(a) allows for a party to amend once as a matter of course. Furthermore, rules governing amendment of pleadings codifies a liberal approach to promote the policy of deciding cases on the merits, instead of on technicalities.  Fed. R. Civ. P. 15(a). The Supreme Court has observed that courts are to heed the mandate that amendments are to be granted "freely" in the interests of justice.  Foman v. Davis, 371 U.S. 178, 182 (1962). However, the grounds upon which a court may deny a motion to amend include unfair prejudice, futility, undue delay, bad faith, and dilatory motive.  Id. at 182. See also, In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1434 (3d Cir. 1997). Additionally, the Third Circuit has held that a plaintiff must be permitted to amend a complaint that fails to state a claim, unless amendment of such a complaint would be futile.  Phillips v. County of Allegheny, 224 F.3d 224 (3d Cir. 2008) (quoting Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000)).

## **Discussion**

42 U.S.C. §1983 in itself does not create substantive rights for plaintiffs; rather, it is the source of redress for Constitutional violations or federal statutory rights. Baker v. McCollan, 443 U.S. 137, 145 (1979). Given that to maintain a cause of action under §1983, a plaintiff must demonstrate that the defendant, acting under color of state law, deprived him of a right secured by the Constitution or federal law, "the first step in evaluating a Section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all.'" Kaucher v. Bucks County, 455 F.3d 418, 423 (3d Cir. 2006), (quoting County of Sacramento v. Lewis, 523 U.S. 833, 841 (1998) and Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000)).

The Constitution does not "mandate comfortable prisons . . . but neither does it permit inhuman ones." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). The Eighth Amendment imposes a duty to provide convicted prisoners with medical treatment for their serious medical needs. Estelle v. Gamble, 429 U.S. 97, 103 (1976). The Supreme Court has established a two-part standard that a prisoner-plaintiff must satisfy in order to recover for an Eighth Amendment violation. First, the prisoner-plaintiff must have suffered from a serious medical need, and second, the prison

officials must have acted deliberately indifferent to that serious medical need. Estelle, 429 U.S. at 97.

The "deliberate indifference" standard requires a "showing that the official was subjectively aware of the risk." Farmer v. Brennan, 511 U.S. 825, 829 (1994). In considering the inmate's claim in Estelle that inadequate prison medical care violated the Cruel and Unusual Punishments Clause, the Supreme Court distinguished "deliberate indifference to serious medical needs of prisoners" from mere "negligen[ce] in diagnosing or treating a medical condition." Estelle, 429 U.S. at 106. The Court held that only the former violates the Clause, and thus Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." Id. (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).

Furthermore, not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny. After incarceration, only the "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment forbidden by the Eighth Amendment. Ingraham v. Wright, 430 U.S. 651, 670 (1977). Accordingly, a physician's negligence in diagnosing or treating a prisoner's complaint is not a Constitutional violation merely because the patient is a prisoner. Estelle, 429 U.S. at 106. To constitute a cognizable Eighth Amendment claim of cruel and unusual treatment a prisoner

must allege a physician's act or omission that "offends evolving standards of decency." Id. In Estelle, although the pain medication the doctor provided to the prisoner was ineffective, the Court reasoned that it is "obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Id. at 98.

Here, Plaintiff's claim against Defendant is more similar to the "negligence in treating a prisoner" than to the "deliberate indifference towards a serious medical need" distinction outlined in Estelle. While Dr. Mandel did not treat Plaintiff on November 5, 2011 because Plaintiff's transport was late, he nevertheless advised that Plaintiff should be transported to an emergency room. That the transport to an emergency room subsequently never occurred is not associated with the actions of Dr. Mandel, but instead was a result of a failure on the part of the Bureau of Prisons. After Plaintiff refused the March 12 surgery scheduled with Defendant, Dr. Mandel did not offer any subsequent referrals or provide any options for alternative surgeries as by that time Plaintiff had expressed his loss of confidence in Moving Defendant's abilities and had requested referrals from two other doctors.

The next threshold that must be met under Estelle is the seriousness of the inmate's medical need. A medical need is

serious if it is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Pace v. Fauver, 479 F.Supp. 456, 458 (D.N.J. 1979). In addition, where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious.  See, e.g., Archer v. Dutcher, 733 F.2d 14, 16 (2d Cir. 1984) (pregnant inmate who miscarried stated cognizable claim where she alleged that defendants intentionally delayed emergency medical aid in order to make her suffer); Ramos v. Lamm, 639 F.2d 559, 576 (10th Cir. 1980) (delay in providing oral surgery resulted in "continued and unnecessary pain and loss of teeth"); and Laaman v. Helgemoe, 437 F.Supp. 269, 312 (D.N.H 1977)(denial of treatment may result in permanent damage or require corrective surgery).

Here, while the Complaint makes clear that the damage done to Plaintiff's hand is "severe and permanent" as a result of the delays in treatment and that Plaintiff experienced "great physical pain and mental anguish" from those delays, Defendant Mandel was not deliberately indifferent. Again, the Complaint is clear that Defendant Mandel did treat Plaintiff, but he did so negatively. Plaintiff therefore fails to allege sufficient facts to plead a viable cause of action under the Eighth Amendment. (See Ex A. at ¶ 28.)

**CONCLUSION**

In sum, while Plaintiffs should be permitted to liberally amend a pleading pursuant to Rule 15(a), Plaintiff here has already amended his pleading once. He therefore cannot amend the pleading again without first procuring leave of court. Furthermore, Plaintiff fails to allege a valid cause of action for violation of his Eighth Amendment rights under 42 U.S.C. §1983, because he fails to establish that Defendant was deliberately indifferent in his medical treatment of Plaintiff's hand under the Estelle v. Gamble standard. For these reasons, Defendant's motion to dismiss Count IX of Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED.

An order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Thomas Warren | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | NO. 11-CV-6050 |
| Richard J. Mandel, M.D., et al | : | |

**ORDER**

AND NOW, this     20th     day of June, 2012, upon consideration of the Motion of Defendant Richard Mandel to dismiss with prejudice Count IX of Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), and any response thereto, it is hereby ORDERED and DECREED that Defendant's Motion is GRANTED and Count IX of Plaintiff's Amended Complaint against Defendant is dismissed with prejudiced.

IT IS FURTHER ORDERED that Plaintiff is precluded from amending the pleadings again without leave of court and upon a showing of good cause.

                                           BY THE COURT:


                                           s/J. Curtis Joyner
                                           J. CURTIS JOYNER, C.J.