**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THOMAS WARREN, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | NO. 11-CV-6050 |
| DR. LUIS JOSE BOGGIO, et al., | : | |
| Defendants | : | |

**MEMORANDUM AND ORDER**

**JOYNER, C.J.** **July 31, 2012**

This Section 1983 and medical malpractice action is presently before the Court for disposition of the Motion of Defendants, Dr. Luis Jose Boggio, et al., to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 30). For the reasons that follow, the Defendants' motion is granted.

**Factual Background**

According to the facts alleged in the complaint, on September 26, 2009, Plaintiff, a prisoner of the Commonwealth of Pennsylvania injured his left thumb while playing basketball at the Curran-Fromhold Correctional Facility (hereinafter "CFCF") in Philadelphia. Plaintiff's hand was x-rayed at the prison facility

that day and Defendant Dr. Luis Jose Boggio, reviewed the x-rays and determined that Plaintiff did not have a broken hand.

On September 29, 2009, Plaintiff was involved in a physical altercation with another inmate which may have aggravated his injury. Plaintiff's hand was again x-rayed and a Dr. Clemons reviewed those x-rays as well as the x-rays taken on September 26, 2009, and determined that Plaintiff had actually sustained a fracture to his thumb on September 26, 2009. The x-rays were again examined on September 30, 2009, by Defendant Dr. James Arnone who agreed that Plaintiff's hand was broken. Dr. Arnone then scheduled an appointment for Plaintiff to meet with an orthopedic surgeon.

Plaintiff met with Defendant Dr. Richard J. Mandel at the Philadelphia Prison Systems Detention Center on October 2, 2009. Dr. Mandel examined the x-rays, agreed that the hand was broken, and informed Plaintiff that he would need surgery to repair the fracture which would include inserting two metal pins into Plaintiff's hand.

On October 9, 2009, Dr. Mandel performed surgery on Plaintiff's thumb. Two metal pins were inserted into plaintiff's hand and following surgery, Plaintiff's hand was splinted and bandaged. Plaintiff was told he would have a follow-up appointment with Dr. Mandel within ten to fourteen days.

On October 17, 2009, Plaintiff experienced sharp pain in his

hand and was taken to the medical unit at CFCF, where he was told by the doctor on duty that one of the metal pins was pushing against his skin. The doctor ordered an x-ray of the hand, prescribed Tylenol for Plaintiff's pain, and informed Plaintiff that he would schedule an appointment for him with an orthopedic surgeon. An x-ray was subsequently taken on October 19, 2009. The x-ray was allegedly examined by Dr. Arnone without comment.

On October 24, 2009, Plaintiff was again examined at the medical unit of CFCF, this time by a Dr. Burke who put in an order for Plaintiff to meet with Dr. Mandel. Dr. Burke also prescribed more Tylenol for Plaintiff's pain.

On November 2, 2009, Plaintiff allegedly found that the metal pin had broken though his skin and Plaintiff observed blood and pus on his bandage. Plaintiff was taken to the medical unit where he was examined by Dr. Boggio. Plaintiff requested that he be sent to the hospital. Dr. Boggio refused to send Plaintiff to the hospital and re-bandaged Plaintiff's hand with the metal pin still protruding from the hand.

On November 3, 2009, Defendant Deputy Warden Gerald May was allegedly informed of Plaintiff's medical history and observed the metal pin protruding from Plaintiff's hand. He saw the blood on Plaintiff's bandage and allegedly told Plaintiff to "man up." Compl. ¶ 32. At some point that day, Plaintiff was again taken to the medical unit at CFCF where he saw Dr. Clemons. Dr. Clemons

put in another order for Plaintiff to meet with Dr. Mandel.

On November 5, 2009, Plaintiff was being transported to see Dr. Mandel when he was informed that the appointment had been cancelled by Dr. Mandel because the transport was late. Dr. Mandel was informed of Plaintiff's condition and was told by Dr. Burke that Plaintiff was in excruciating pain. Dr. Mandel told Dr. Burke to send Plaintiff to an emergency room. However, Kim Daniels, R.N. refused to send Plaintiff to an emergency room. Dr. Arnone also refused to send Plaintiff to an emergency room and instead offered to give him Vicodin for the pain.

Allegedly, on November 6, 2011, Defendant Warden John Delaney saw the pin sticking out of Plaintiff's hand and told Plaintiff to "stop crying you big wuss" but failed to make any arrangements for medical treatment until November 11, 2009.

On November 11, Plaintiff again saw Dr. Mandel who removed the pin from Plaintiff's hand and did not re-splint Plaintiff's hand. Plaintiff again saw Dr. Mandel on November 19, 2011, at which time Dr. Mandel may have removed a K-wire from Plaintiff's hand and again did not re-splint the hand.

On February 1, 2010, Plaintiff's hand was examined at the Philadelphia Prison Systems Detention Center by Dr. Dennis P. McHugh who informed Plaintiff that he should see Dr. Mandel as soon as possible to discuss revision surgery. Plaintiff subsequently met again with Dr. Mandel on March 1, 2010, who

removed a K-wire and recommended surgery to remove the remaining wire and pin. Surgery was scheduled for March 12, 2010.

On March 12, 2010, Plaintiff refused the surgery proposed by Dr. Mandel because the procedure suggested by Dr. Mandel was contrary to the revision surgery suggested by Dr. McHugh. Plaintiff alleges that Dr. Arnone, in a written grievance response, claimed that Dr. Mandel did not offer the revision surgery because Plaintiff had filed a lawsuit against him. Allegedly, Dr. Arnone also falsely claimed that Plaintiff had caused the failure of Dr. Mandel's surgery by removing the splint, taking the pin out of his thumb, and prematurely using the hand.

After declining the surgery suggested by Dr. Mandel, Plaintiff requested that Dr. Arnone and Ms. Daniels refer him to another orthopedic surgeon. Plaintiff was not referred to another physician until he was examined by Albert A. Weiss, M.D., at Temple University Hospital on July 16, 2010. Dr. Weiss informed Plaintiff that revision surgery would not be possible and recommended surgery that by design would result in the total loss of carpal-metacarpal joint motion. That surgery was subsequently performed in December, 2010, and resulted in total loss of Plaintiff's carpal and metacarpal joint motion.

Plaintiff also alleges, without providing any specifics, that several of the Defendants tampered with his medical records

in order to undermine Plaintiff's grievances concerning the care and treatment of his left thumb fracture.

Plaintiff has brought various § 1983 claims for violations of his right to be free from cruel and unusual punishment under the Eighth Amendment as well as deprivation of due process under the Fifth and Fourteenth Amendments. These claims are asserted against a number of Defendants, including Dr. Boggio, Dr. Arnone, Dr. Mandel, Kim Daniels, Dr. John Doe No.1, Dr. John Doe No. 2, Dr. John Doe No. 3, Louis Giorla (Commissioner of the Philadelphia Prison System), Warden John Delaney, Deputy Warden Gerald May, Bruce Herdman (Chief of Medical Operations of the Philadelphia Prison System), and the City of Philadelphia. Plaintiff also alleges state law claims of medical malpractice against Defendants, Dr. Boggio, Dr. Arnone, Dr. Mandel, Dr. John Doe No. 1, Nurse Daniels, and Corizon Health, Inc. Defendants (excluding Dr. Mandel) have filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

**Standard of Review**

When considering a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), we must accept "all well-pleaded allegations in the complaint as true and draw all reasonable inferences" in a light most favorable to the Plaintiff. Birdman v. Office of the Governor, 677 F.3d 167, 171 (3d Cir. 2012) (quoting McGovern v. City of Phila., 554 F.3d 114, 115 (3d Cir. 2009)). "To survive a

motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

Fed. R. Civ. P. 8 requires a short, plain statement showing that the plaintiff is entitled to relief but "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown that the pleader is entitled to relief." Iqbal, 556 U.S. at 679 (internal quotations omitted). "Threadbare" recitations of the elements of a claim supported only by "conclusory statements" will not suffice. Id. at 678. Rather a plaintiff must allege some facts to raise the allegation above the level of mere speculation. Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 176 (3d Cir. 2010) (citing Twombly, 550 U.S. 555). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

**Discussion**

As noted, Plaintiff's Amended Complaint raises federal claims for violations of the Fifth, Eighth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 and under Pennsylvania common law for medical malpractice.

As the due process clause of the Fifth Amendment protects only against deprivations of process by the federal government and Plaintiff alleges claims only against state actors, the Fifth Amendment is inapplicable and is therefore summarily dismissed.

To sustain a claim of deprivation of due process pursuant to the Fourteenth Amendment, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233-234 (3d Cir. 2006). Plaintiff supports his Fourteenth Amendment claim with the mere conclusory statement that Defendants tampered with his medical records. As such, Plaintiff has failed to allege facts sufficient to maintain a plausible § 1983 claim for deprivation of due process under the Fourteenth Amendment.

The government has a constitutional obligation to provide for the medical care of those persons it punishes through incarceration. Estelle v. Gamble, 429 U.S. 97, 103 (1976). Therefore, "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983" as a violation of the Eighth Amendment. Id. at 104. The Supreme Court has established a two-part test for determining when a prisoner's insufficient medical treatment constitutes a constitutional

violation. Id. at 106. To state a claim, the plaintiff must allege "that (1) the defendant was deliberately indifferent to his medical needs and (2) those needs were serious." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)).

Mere negligence or medical malpractice does not rise to the level of a constitutional violation. Estelle, 429 U.S. at 104. Prison doctors and medical personnel should be granted "considerable latitude . . . in the diagnosis and treatment of the medical problems of inmate patients." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979). No claim arises merely because two prison doctors may disagree with the proper course of treatment. White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). Furthermore, a non-medical prison official will not be held liable for an Eighth Amendment violation where he or she fails to respond to the medical complaints of a prisoner who is already being treated by a physician or physicians. Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

The existence of "deliberate indifference" requires a "showing that the official was subjectively aware" of a risk to an inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 829 (1994). In order for a prison official to be liable for denying or delaying a prisoner access to medical treatment, the official must both be aware of an "excessive risk" to the

inmate's health and disregard that risk. Id. at 837. While deliberate indifference may be demonstrated by an intentional denial or delay of medical care, where a prisoner has received some medical care and alleges mistreatment because of a dispute over the adequacy of that care, the courts should be "reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." United States ex rel. Walker v. Fayette Cnty., 599 F.2d 573, 575 n.2 (3d Cir. 1979) (internal quotation marks omitted).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (quoting Pace v. Fauver, 479 F.Supp. 456, 458 (D.N.J. 1979)). A medical need is also considered serious when it results in "unnecessary and wanton infliction of pain" or when denial or delay in treatment results in a "life-long handicap or permanent loss." Lanzaro, 834 F.2d at 347 (internal quotations omitted).

In Estelle, the Court found that although not every possible avenue had been taken in treating an inmate's back pain, a constitutional violation did not exist merely because the prescribed remedies failed to relieve the inmate of his pain. Estelle, 429 U.S. at 107. Although certain diagnostic approaches

were not taken – such as an x-ray of the inmate's back – because the inmate had been examined by multiple doctors over an extended period of time, there was no evidence that the prison medical staff had acted with deliberate indifference. Id. Rather, the Court found that although the failure to properly treat the inmate's pain might give rise to a claim of medical malpractice, there was no constitutional violation under the Eighth Amendment. Id.

In the instant action, based on the facts alleged in Plaintiff's complaint, it is apparent that Plaintiff's broken hand constituted a serious medical condition. Indeed, Plaintiff alleges that the failure to properly treat his fracture eventually resulted in a severe loss of joint motion. However, an allegation of a serious medical condition, improperly treated, is not enough to establish a constitutional violation. Plaintiff must also demonstrate that the Defendants acted with "deliberate indifference" by knowingly disregarding a severe risk to Plaintiff's health.

As Plaintiff's own complaint indicates, on the same day that he was injured, he was examined by a doctor, x-rays of his broken hand were taken, and he was prescribed medication to alleviate his pain. Upon aggravating the injury several days later, a second doctor examined the hand, again took x-rays, and properly diagnosed the fracture.

Furthermore, Plaintiff's complaint indicates that over several months he was examined no fewer than fifteen separate times by at least ten different physicians. Additionally, Plaintiff was repeatedly x-rayed, prescribed various medications for his pain, and operated on twice to treat the fracture in his hand. While it may be that Plaintiff states a claim for medical malpractice, he does not allege facts sufficient to show that Defendants acted with deliberate indifference to his medical needs. Rather, it seems that extensive, albeit ineffective, measures were taken to address Plaintiff's medical needs.

Accordingly, we grant Defendants' Motion and dismiss Plaintiff's § 1983 federal claims pursuant to Fed. R. Civ. P. 12(b)(6). We further decline to exercise supplemental jurisdiction over Plaintiff's state law malpractice claims and we shall therefore dismiss those claims as well pursuant to 28 U.S.C. § 1367(c)(3), with leave to Plaintiff to re-file his state law claims in the appropriate state court within the time prescribed by 28 U.S.C. § 1367(d).

An order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THOMAS WARREN, | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | NO. 11-CV-6050 |
| DR. LUIS JOSE BOGGIO, et al., | : | |
| Defendants. | : | |

**ORDER**

AND NOW, this 31st day of July, 2012, upon consideration of Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 30), it is hereby ORDERED that the Motion is GRANTED and Plaintiff's Complaint is DISMISSED with leave to re-file his remaining state law claims in the appropriate state court for the reasons articulated in the preceding Memorandum Opinion.

BY THE COURT:

s/J. Curtis Joyner
J. CURTIS JOYNER, C.J.